IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHAWN McCURLEY                                                                          PLAINTIFF

vs.                                                      CIVIL ACTION No.: 3:19-CV-513-HTW-LGI

BENAY NORDIN HOLMES                                                                   DEFENDANT

### ORDER

BEFORE THIS COURT is a ***Motion for Summary Judgment* [Docket no.7],** filed by the defendant, Benay Nordin Holmes (hereinafter referred to as "Defendant"). Plaintiff Shawn McCurley (hereinafter referred to as "Plaintiff") opposes Defendant's motion. Summary judgment is not appropriate, says Plaintiff, because the material facts of this case are genuinely disputed. This court has reviewed the submissions of the parties and the relevant jurisprudence and agrees with the Plaintiff, for the reason stated *infra*.

**I.    JURISDICTION**

Federal courts are courts of limited jurisdiction. The parties have not challenged whether this court possesses subject matter jurisdiction. This court, nevertheless, has an independent obligation to verify it indeed possesses subject matter jurisdiction.[1]

---

[1] Federal courts are obliged to examine the basis for the exercise of federal subject-matter jurisdiction. *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999). A federal district court may examine its subject-matter jurisdiction over a matter, *sua sponte*, at any time. *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) (a court must raise the issue *sua sponte* if it discovers that it lacks subject matter jurisdiction); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2007). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).
*Dean v. Mozingo*, 521 F. Supp. 2d 541, 551 (S.D. Miss. 2007)(overturned on other grounds).

Federal civil jurisdiction principally is founded upon Title 28 U.S.C. § 1332[2] and §1331[3]. The former is recognized as diversity jurisdiction, while the latter is described as federal question jurisdiction. Defendant herein asserts that this lawsuit features diversity jurisdiction because the the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000 and Defendant is not a citizen of Mississippi. [Docket no. 1].

Diversity of citizenship subject matter jurisdiction requires the matter in controversy to "exceed[] the sum or value of $75,000, exclusive of interest and costs," and complete diversity of citizenship between a plaintiff and a defendant. *See* Title 28 U.S.C. § 1332. "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction." *Stafford v. Mobile Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991). "When jurisdiction depends on citizenship, citizenship should be 'distinctly and affirmatively alleged.'" *Id.*; *see also Powell v. Abney*, 83 F.R.D. 482, 487 (S.D. Tex. 1979) ("In invoking diversity jurisdiction, the plaintiff's complaint must specifically allege each party's citizenship and these allegations must show that the plaintiff and defendant are citizens of different states."). The court cannot assume diversity of citizenship exists; the parties cannot even stipulate to its existence; nor waive it. *Elam v. Kansas City Southern Ry. Co.* 635 F.3d 796, 802 (5th Cir. 2011).

---

[2] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

    (1) citizens of different States;

    (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

    (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C.A. § 1332 (West)

[3] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
28 U.S.C.A. § 1331 (West)

This jurisdictional grant manifests two non-negotiable requirements– diversity of citizenship and the requisite amount in controversy of $75,000, exclusive of interests and costs. Where a plaintiff does not specify the amount of damages sought, the jurisdictional amount in controversy may be satisfied where a plaintiff seeks compensatory and punitive damages, limited only by the jurisdictional amount of the state court from which the lawsuit originated. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000); *Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326 (5th Cir. 1995). Plaintiff's complaint here does not seek a specific amount of damages but seeks compensatory and punitive damages. The jurisdictional limit of State of Mississippi County Courts is $200,000. *See* Miss. Code § 9-9-21[4]. Plaintiff also seeks to recover attorney's fees and interest thereupon, in an amount not to exceed the jurisdictional limits of this court.

Plaintiff is an adult resident of the State of Mississippi and resides in Hinds County, Mississippi. Defendant is an adult resident of the State of Tennessee and resides in Sevier County, Tennessee.

---

[4] (1) The jurisdiction of the county court shall be as follows: It shall have jurisdiction concurrent with the justice court in all matters, civil and criminal of which the justice court has jurisdiction; and it shall have jurisdiction concurrent with the circuit and chancery courts in all matters of law and equity wherein the amount of value of the thing in controversy shall not exceed, exclusive of costs and interest, the sum of Two Hundred Thousand Dollars ($200,000.00), and the jurisdiction of the county court shall not be affected by any setoff, counterclaim or cross-bill in such actions where the amount sought to be recovered in such setoff, counterclaim or cross-bill exceeds Two Hundred Thousand Dollars ($200,000.00). Provided, however, the party filing such setoff, counterclaim or cross-bill which exceeds Two Hundred Thousand Dollars ($200,000.00) shall give notice to the opposite party or parties as provided in Section 13-3-83, and on motion of all parties filed within twenty (20) days after the filing of such setoff, counterclaim or cross-bill, the county court shall transfer the case to the circuit or chancery court wherein the county court is situated and which would otherwise have jurisdiction. It shall have exclusively the jurisdiction heretofore exercised by the justice court in the following matters and causes: namely, eminent domain, the partition of personal property, and actions of unlawful entry and detainer, provided that the actions of eminent domain and unlawful entry and detainer may be returnable and triable before the judge of said court in vacation. The county court shall have jurisdiction over criminal matters in the county assigned by a judge of the circuit court district in which the county is included.
Miss. Code. Ann. § 9-9-21 (West)

This court, accordingly, finds that the parties are completely diverse and the amount in controversy requirement of 28 U.S.C. § 1332 has been satisfied. Accordingly, this court holds that it possesses diversity of citizenship subject matter jurisdiction.

A federal court with diversity jurisdiction applies the substantive law of the forum state. *Learmonth v. Sears, Roebuck & Co.* 710 F.3d 249, 258 (5th Cir. 2013). A district court, then, must apply the choice of law rules of the state in which the action is brought. *Williamson Pounders Architects PC v. Tunica Cty., Miss.* 597 F.3d 292, 295 (5th Cir. 2010). Mississippi is the forum state for the lawsuit *sub judice*. Its choice of law provisions must be enforced here and given effect unless Mississippi's provisions are arbitrary or fundamentally unfair. *Id*. Thus, obedient to the longstanding doctrine of *Erie Railroad Co., v. Tompkins*, 304 U.S. 64 (1938), this court, sitting in Mississippi, applies the substantive law of Mississippi to this dispute.

## II.  FACTUAL HISTORY

### a. Defendant's Allegations

Sometime in 2000, Defendant and her husband, John Holmes, (hereinafter referred to as "Holmes") entered into a lease agreement with the plaintiff's husband, Brian McCurley (hereinafter referred to as "McCurley"), for space in which Defendant could open a day spa and salon. The space leased by Defendant and Holmes was next door to McCurley's office. Subsequently, McCurley became a family friend of Defendant and her husband, Holmes.

Defendant's friendship with McCurley evolved into a romantic and sexual relationship. From 2002 until 2005, Defendant and McCurley engaged in sexual relations, according to Defendant, approximately five or six times. After 2005, says Defendant, she had no further sexual contact with McCurley and did not renew that relationship. In 2007, Defendant and her family

4

moved to the State of Tennessee. Since that time, says Defendant, she has seen McCurley only one time, at her uncle's funeral in 2017 or 2018[5].

In May 2016, McCurley confessed his affair to his daughter, Jennifer McCurley (hereinafter referred to as "J.M."). J.M. stated that McCurley did not, at that time, disclose the identity of his paramour. On July 4, 2018, J.M. disclosed the affair to her mother, the Plaintiff. From 2005 until July 4, 2018, Plaintiff and McCurley had lived together as husband and wife. On July 4, 2018, Plaintiff thrust McCurley out of their marital home.

In September 2018, Plaintiff allowed McCurley to move back into the marital home. In August 2019, McCurley again moved out of the marital home for the final time.

At her deposition, Plaintiff testified that McCurley's affections towards her were lost sometime between 2001 and 2008. As of the filing of the Motion for Summary Judgment, neither Plaintiff nor her husband has filed for divorce.

b. *Plaintiff's Allegations*

Plaintiff and McCurley were married on May 3, 1980, in Jackson, Mississippi. In 2000, Plaintiff and her husband, McCurley, entered into a lease agreement with Defendant and Holmes, allegedly, for space for Defendant to open a day spa and salon. Defendant's space was located next door to McCurley's alarm company business.

In the summer of 2001, McCurley and Plaintiff's daughter, J.M., worked for Defendant in her business. J.M. stated that during that summer of 2001, she often observed Defendant in McCurley's office, sitting on his desk, and talking with him. J.M. recalled these interactions

---

[5] Defendant, during her Deposition on December 18, 2019, stated: "The only time that I was saw Brian McCurley was when my uncle passed away, I think two years ago." [Docket no. 7-2 at p. 17]. Plaintiff's Affidavit, on the other hand, states that Defendant was in Mississippi "in April 2018 for the funeral of her uncle…" [Docket no. 10-1 at P. 2]. The record before this court does not reflect the exact date for the funeral of Defendant's uncle.

between her father and the Defendant when she and the Plaintiff sought to uncover the identity of McCurley's mistress.

As stated *supra*, Defendant testified that she and McCurley had sexual relations approximately five or six times, but that special contact ended in 2005. Plaintiff asserts that this testimony contradicts statements made by both J.M. and Holmes. According to J.M., on July 4, 2018, Defendant admitted that the relationship between Defendant and McCurley had lasted for years and had not ended until about two (2) years ago[6]. Plaintiff alleges that, thereafter, on July 7, 2018, Holmes informed Plaintiff that the affair between their spouses had ended only a few months previously.

Shortly after July 4, 2018, when Plaintiff learned of McCurley and Defendant's affair, McCurley and Defendant were exchanging messages on Facebook Messenger[7]. Plaintiff alleges that it is obvious that Defendant and McCurley were still in intimate contact on July 16, 2018, as Defendant questions McCurley as to whether he "made it home". Further, alleges Plaintiff, McCurley and Defendant messaged each other in a teasing way about the fact that they had been more than friends for much longer than two (2) years.

Four days later, on July 20, 2018, McCurley sent a text message to Defendant with a picture of himself in his underwear, in what appears to be a sexually-aroused state, taken at the home of McCurley's mother. Upon discovering the July 20th text message, Plaintiff was allegedly inconsolable and forwarded a copy of the text picture message to Defendant's husband, Holmes.

---

[6] J.M.'s sworn Affidavit states that Defendant was unable to provide an exact end date for the affair but that Defendant and her father "had not had sex for over two (2) years." [Docket no. 10-2 at ¶ 16].

[7] Facebook Messenger is an instant messaging application developed by the social media platform, Facebook, Inc.

On August 12, 2018, Plaintiff discovered a voice message from Defendant to McCurley in which Defendant questioned why McCurley has not called her back "like he told her he would do". The voice message had been dated April 10, 2018.

On January 1, 2019, Defendant left Plaintiff an audio message stating that she could not remember how often she and McCurley had sexual relations while they were working in the same building, but that she did not guess that it had been every day. On January 3, 2019, Plaintiff and Defendant had a lengthy telephone conversation in which Plaintiff learned for the first time that Defendant had sex with McCurley at McCurley and Plaintiff's marital home on the morning that McCurley suffered a heart attack. During that telephone conversation, on January 3, 2019, Defendant told Plaintiff that Defendant had sex with McCurley at the home of Defendant's parents as the home was empty because Defendant's parents had relocated to Tennessee. Defendant's parents sold the home on June 9, 2017, approximately two (2) years prior to Plaintiff filing her Complaint.

In the early part of 2018, Defendant and McCurley exchanged text messages in which they expressed their love for each other, seemingly teasing each other about which of them loved the other more. In this text message exchange, McCurley questioned Defendant about making a trip down to Mississippi.

After Plaintiff confronted McCurley about the affair on July 4, 2018, McCurley moved out of the marital home and to his mother's home. McCurley and Defendant remained in contact while McCurley was living at his mother's home. McCurley moved back to the marital home in mid-September, 2018. Thereafter, in May 2019, McCurley leased an apartment and has not returned to the marital home, supposedly abandoning the marital relationship for good.

On July 29, 2018, Defendant sent a Facebook Message to Plaintiff's sister-in-law, Donna McAlpin (hereinafter referred to as McAlpin). Plaintiff asserts that prior to Defendant's message, McAlpin had no idea who Defendant was, had never met Defendant and had never even heard Defendant's name mentioned among the family. The Facebook Message from Defendant accused Plaintiff of being "nuts", trying to manipulate McCurley and trying to "mess with [McCurley's] head. The Message noted that Plaintiff was accusing Defendant and [McCurley] of having an affair (which they were), and that Plaintiff was threatening to involve [McCurley's] boss, Victor Mason, the Sheriff of Hinds County. According to Plaintiff, Defendant stated to McAlpin: "I fear for his (Brian's) wellbeing and health and what she may do to him."

    c.   *The Complaint*

On June 27, 2019, Plaintiff initiated the lawsuit *sub judice* in the County Court of Hinds County, Mississippi. Plaintiff's Complaint against Defendant [Docket no. 1-1] asserted claims for alienation of affection and intentional infliction of emotional distress. Plaintiff's Complaint asserted that Defendant's actions alienated the affection of her husband, McCurley, and deprived Plaintiff of the comfort, society, aid, and assistance which she otherwise would have enjoyed from her husband. [Docket no. 1-1, ¶ 5]. Plaintiff stated further that Defendant's actions caused injury to Plaintiff's reputation, and that these actions made Plaintiff the subject of ridicule by her family and friends. Plaintiff finally asserted that she had "suffered mental, emotional and physical distress, pain, anguish, and suffering and will continue to so suffer in the future." [Docket no. 1-1 at ¶ 6].


### III.   ANALYSIS

#### a. *Summary Judgment Standard*

Defendant asks this court to grant summary judgment in her favor, arguing that Plaintiff has presented no genuine disputes of material fact which would entitle Plaintiff to recover. Defendant asserts that the extra-marital sexual relationship between Defendant and McCurley ended before Defendant moved to Tennessee in 2017; therefore, Plaintiff's claims against Defendant are time-barred by either the three-year statute of limitations (for alienation of affection) or the one-year statute of limitations (for intentional infliction of emotional distress).

The jurisprudence governing summary judgment is well-established and summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 325. A genuine issue of fact is significantly probative or more than merely colorable such that a finder of fact could reasonably return a verdict for the non-movant. *Anderson*, 477 U.S. at 248. The non-movant's burden is not satisfied "with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). In the absence of proof, the court will not assume the nonmoving party could or would prove the necessary facts. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

In making its determination, this court must take all inferences drawn from the record in a light most favorable to the non-movant. *Matisushita Elec. Indus. Co. Ltd. V. Zenith Radio Corp.*, 475 U.S. 574 (1986). This court must also not make credibility determinations or weigh the evidence at this stage of the litigation. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000).

    b. *Alienation of Affection*

In Mississippi, the tort of alienation of affection is a recognized cause of action, the purpose of which is to protect the marriage relationship and provide a remedy for intentional conduct that causes a loss of consortium. *Fitch v. Valentine*, 959 So.2d 1012 (Miss. 2007). The elements of the tort of alienation of affection[ ] are: '(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss.' " *Carter v. Reddix*, 115 So. 3d 851, 857 (Miss. Ct. App. 2012) (Citing *Knight v. Woodfield*, 50 So.3d 995, 999 (¶ 14) (Miss.2011) ) *See also Fitch* 959 So.2d at 1025 (¶ 36).

To assert successfully a claim for alienation of affection, a plaintiff must establish that her spouse was induced to abandon her by some active interference on the part of the defendant. *Lyon v. McGee,* 249 So.3d 436, 441042 (Miss. Ct. App. 2018). Once such a cause of action has been established, the Mississippi Supreme Court has consistently recognized punitive damages as a legitimate form of relief in alienation of affections cases. *Fitch,* 959 So. 2d at 1028 (Citing *Brister v. Dunaway,* 149 Miss. 5, 115 So. 36 (1928)).

Alienation of affection claims have a three-year statute of limitations. *Hancock v. Watson*, 962 So.2d 627, 631 (Miss. Ct. App. 2007). This statute of limitations is not triggered by the *discovery* of the wrongdoing; rather, it begins to run on the last day the defendant and paramour participated in the affair. *Fulkerson v. Odom*, 53 So.3d 849, 852 (Miss. Ct. App. 2011).

Defendant points to the facts in *Fulkerson* in support of her theory that Plaintiff's alienation of affection claim is time-barred. In *Fulkerson*, the plaintiff's wife engaged in an affair with the defendant, which ended in June 2003. *Id*. The plaintiff first learned of the affair in November 2006 and sued the defendant for alienation of affection in November 2007. *Id*. The trial court granted the defendant summary judgment based on the plaintiff's failure to file suit within three years of the accrual of his claim: *the date the affair ended*. *Id*. (emphasis added). The Mississippi Court of Appeals affirmed the trial court's ruling, finding that plaintiff's loss of affection for his wife, once he learned of the affair, was irrelevant for accrual purposes. *Id*. That Court further found that the actual harm is not the affair itself, but the loss of affection or consortium resulting from the affair. *Id*.

This court agrees with the Court's ruling in *Fulkerson*, as well as the Court's analysis. In the matter *sub judice*, however, this court is presented with conflicting and contradictory facts regarding when the affair between Defendant and McCurley ended, and if, in fact, it has ended at all. Defendant alleges that her tryst with McCurley ended before she left the State of Mississippi in 2007.  Plaintiff and McCurley's daughter, on the other hand, purport that Defendant confessed to ending the affair sometime in the two years preceding July 2018.  Plaintiff further contends that Defendant's husband, Holmes, indicated that the affair ended only a few months before July 2018.

This court also notes that Defendant has been in contact with McCurley long after she moved to Tennessee. Correspondence between Defendant and McCurley shows that McCurley and Plaintiff remained close. Although this court does not make inferences as to the nature of the parties' ongoing relationship, this court cannot determine, based on the submitted correspondence whether the sexual relationship between McCurley and the Defendant irrefutably came to a halt.

11

This court, therefore, is unable to pinpoint when the statue of limitations for Plaintiff's alienation of affection claim was triggered.

Based on the aforementioned factual allegations and the submissions of the parties, this court finds that summary judgment is inappropriate here. The parties have presented this court with genuine disputes of material fact which persuade this court that Plaintiff's cause of action for alienation of affection must be submitted to a jury.

    c. *Intentional Infliction of Emotional Distress*

"To establish a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant, through "extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress to another...." *Waters v. Allegue*, 980 So. 2d 314, 318–19 (Miss. Ct. App. 2008) (Quoting *Peoples Bank & Trust Co. v. Cermack*, 658 So.2d 1352, 1365 (Miss.1995) ); *See also* Restatement (Second) of Torts § 46 (1966). To prevail on her claim for intentional infliction of emotional distress, the plaintiff must prove that: (1) the defendant acted willfully or wantonly toward the plaintiff; (2) the defendant's actions are ones which evoke outrage or revulsion in a civilized society; (3) the acts were directed at the plaintiff or intended to cause harm to the plaintiff; (4) the plaintiff suffered severe emotional distress as a result of defendant's actions; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant. *Carter v. Reddix*, 115 So.3d 851, 858 (Miss. Ct. App. 2012). A claim for intentional infliction of emotional distress has a one-year statute of limitations. *Id*.

Defendant asserts that because Plaintiff's intentional infliction of emotional distress claim stem from the same facts as her alienation of affection claim, this claim is also time-barred. Defendant alleges that she has had no meaningful relationship with McCurley since 2005, which could harm Plaintiff in any way. Plaintiff, however, points to ongoing communications between

Defendant and McCurley and to statements made by Defendant to Plaintiff and Plaintiff's family members that paint an altogether different picture.

Plaintiff contends that after she confronted the Defendant about her sexual relationship with McCurley in 2018, Defendant continued to contact the Plaintiff. Defendant's conversations, says Plaintiff, involved statements about her husband, which caused Plaintiff mental distress. Plaintiff contends that Defendant's statements were intended to cause Plaintiff harm, as they contained intimate and unnecessary details of Defendant's sexual escapades with Plaintiff's husband.

Plaintiff also points to Defendant's continued communications with McCurley after Plaintiff had learned of the affair. Plaintiff asserts that these continued communications reflect Defendant's intent to hurt Plaintiff. This court, however, does not find this to be a compelling argument. because Plaintiff cannot show that Defendant intended for Plaintiff to see these communications.  Plaintiff admitted that she learned of this ongoing correspondence by searching through McCurley's phone. This court, at this time, has before it no evidence that the communications were directed at Plaintiff or intended to cause Plaintiff harm.

Plaintiff has not submitted to this court any proof that Defendant's actions caused physical injury to the Plaintiff. The Mississippi Supreme Court, however, has established that where there is no physical injury, as in the case *sub judice*, a party may recover for intentional infliction of emotional distress, "where there is something about the defendant's conduct which evokes outrage or revulsion." *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 290 (Miss. 2007). Based on the record before this court, this court finds that a rational juror, convinced by the plaintiff's remonstrations, could construe Defendant's action as outrageous or repulsive.

Based on the factual allegations and the submissions of the parties, this court finds that the parties have presented this court with genuine disputes of material fact which persuade this court that Plaintiff's cause of action for intentional infliction of emotional distress must also be submitted to a jury. Summary judgment, therefore, is inappropriate.

**IT IS, THEREFORE, ORDERED that defendant's Motion for Summary Judgment [Docket no. 7] hereby is DENIED.**

**SO ORDERED this the 5th day of October 2021.**

/s/HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**